**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **CIRIDELKIS CARABALLO FROMETA** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-26-1842-G** |
| | ) | |
| **CHRIS GANTT, Warden, Cimarron Facility, et al.,** | ) | |
| | ) | |
| **Respondents.** | ) | |

## REPORT AND RECOMMENDATION

Petitioner Ciridelkis Caraballo Frometa, a noncitizen[1] and Cuban national proceeding pro se, filed an Amended Petition for Writ of Habeas Corpus ("Amended Petition"), Doc. 6, challenging under 28 U.S.C. § 2241 his detention by U.S. Immigration and Customs Enforcement ("ICE"). United States District Judge Charles B. Goodwin referred this matter to the undersigned Magistrate Judge in accordance with 28 U.S.C. § 636(b)(1)(B)-(C). Doc. 3. The undersigned set an expedited briefing schedule, Doc. 14, and the Amended Petition is at issue. For the reasons set forth below, the undersigned recommends that the Court grant the Amended Petition, Doc. 6, in part and order Respondents to release Petitioner immediately, subject to the conditions of his prior release on bond.

[1] Unless quoting, this Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

## I. Background

Petitioner, a citizen of Cuba, entered the United States on or about April 19, 2019, near Brownsville, Texas, without inspection or parole. Resp. at 2; Doc. 16-1 at 1 (Notice to Appear). Soon after that, a border patrol officer encountered and detained Petitioner. Resp. at 2. On July 10, 2019, ICE placed Petitioner into removal proceedings before the Immigration Court pursuant to 8 U.S.C. § 1229a through the issuance of a Notice to Appear, and charged him with being inadmissible under (1) 8 U.S.C. § 1182(a)(6)(A)(i) as someone who entered the United States without inspection, and (2) 8 U.S.C. § 1182(a)(7)(A)(i)(I) as someone who entered without valid documents. Resp. at 2; Doc. 16-1 at 1. On the same day, Petitioner demonstrated credible fear of returning to Cuba. Resp. at 2.

On August 28, 2019, an Immigration Judge ("IJ") ordered Petitioner released from custody on a $10,000 bond. Pet. at 2, 7; Resp. at 3; Doc. 16-1 at 3 (IJ Bond Order). On October 24, 2019, Petitioner was released from custody after paying bond. Resp. at 3. The same day, he filed an application for asylum and withholding of removal. *Id.*

On June 13, 2026, Petitioner was arrested by the Tulsa Police Department, which notified ICE of the arrest. *Id.*; Doc. 16-1 at 6 (ICE Encounter Summary). On June 14, 2026, ICE obtained a warrant for Petitioner's arrest, which was served on June 16, 2026. Resp. at 3; Doc. 16-1 at 4 (Warrant for Petitioner's Arrest). Petitioner transferred into ICE

custody on June 16, 2026. Resp. at 3. Respondents allege at this point "[h]is immigration bond was cancelled." *Id.*[2]

Respondents contend Petitioner is detained under 8 U.S.C. § 1225(b)(2)(A) but acknowledge binding Tenth Circuit precedent dictates otherwise. Resp. at 4. Petitioner does not allege he requested a bond hearing. Such a request, though, would likely be futile because all IJs are subject to the binding precedent of *Matter of Yajure Hurtado*, 29 I & N Dec. 216 (BIA 2025), which holds those noncitizens who entered the country without admission or parole are ineligible for a bond hearing.

On August 7, 2026, an IJ ordered Petitioner removed. Doc. 16-1 at 9, 11 (IJ Order of Removal). On August 20, 2026, Petitioner appealed the removal order to the Board of Immigration Appeals ("BIA"), and the appeal is pending. Doc. 16-1 at 13 (Filing Receipt for Appeal); *see also* EOIR, Automated Case Information, *at* https://acis.eoir.justice.gov/en/ (last visited Nov. 5, 2026). Therefore, the removal order is not yet final under 8 C.F.R. § 1241.1.

When Petitioner filed his Amended Petition, he was detained at Cimarron Correctional Facility in Cushing, Oklahoma. Pet. at 1. He remains detained there. *See* ICE Online Detainee Locator System, *at* https://locator.ice.gov/odls/#/results (last visited Nov. 5, 2026).

---

[2] Respondents do not provide any documentary evidence that Petitioner's bond was cancelled or repaid.

## II. Petitioner's Claims

Liberally construed, Petitioner alleges his re-detention without any "pre-deprivation hearing" or other process, after his previous release on bond in 2019, violates the Immigration and Nationality Act ("INA"), its implementing regulations, and due process. Pet. at 7-8. He also alleges (1) he suffered police brutality during his arrest, and (2) his detention violates the Administrative Procedure Act ("APA") and the Fourth Amendment. *Id*. He asks the Court to order his immediate release. *Id.* at 8.

## III. Standard of Review

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

## IV. Analysis

### A. Section 1226(a) applies to Petitioner's detention.

The two sections of the INA at issue that govern detention of noncitizens pending removal proceedings are 8 U.S.C. §§ 1225 and 1226. Section 1225(a)(1) describes an "applicant for admission" as "an alien present in the United States who has not been admitted or who arrives in the United States." *Id.* § 1225(a)(1) (citation modified). Under § 1225(b)(2)(A), "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained." If Petitioner is detained under

§ 1225(b)(2)(A), he is not entitled to a bond hearing. On the other hand, § 1226(a) more generally authorizes detention of a noncitizen pending removal proceedings and entitles the noncitizen to a bond hearing. *See Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1))).

Liberally construed, Petitioner alleges § 1226(a) governs his current detention. *See* Pet. at 7 (alleging his detention without a bond hearing violates § 1226(a), its implementing regulations, and due process). Respondents contend Petitioner is properly detained under § 1225(b)(2)(A) but concede *Santillan Quiroz v. Mullin*, 180 F.4th 1226 (10th Cir. 2026) compels a different outcome. Resp. at 3-5.

The Tenth Circuit recently rejected the statutory interpretation of § 1225(b)(2) as urged by Respondents and applied § 1226(a) to govern detention of noncitizens like Petitioner. *Santillan Quiroz*, 180 F.4th at 1235-49. The Tenth Circuit concluded "those who entered the United States without admission and who have lived here since are categorically unable to seek admission while they remain in the country." *Id.* at 1239 (citation modified). Accordingly, "noncitizens who entered the United States and were thereafter detained in the interior of the country are usually subject to § 1226(a) (and thus eligible for bond), not § 1225(b)(2)(A)." *Id.* at 1237. Therefore, based on Tenth Circuit precedent and this Court's prior reasoning in *Munoz v. Holt*, No. CIV-25-1190-G, 2026

WL 2200433, at *3 (W.D. Okla. July 30, 2026), the Court should apply § 1226(a) to govern Petitioner's current detention.[3]

Further, Petitioner's application for asylum does not change the analysis or render him "seeking admission" and thereby subject to § 1225(b)(2)(A). *Santillan Quiroz*, 180 F. 4th at 1239 (holding a noncitizen "cannot make a present request for permission to enter the United States, lawfully or otherwise, once he or she has already entered" and "the only time a noncitizen can be said to be seeking admission is when he is seeking to enter the United States at the border" (citation modified)).

Therefore, at a minimum, Petitioner is entitled to a bond hearing under § 1226(a).

**B. The revocation of Petitioner's bond violated the INA and its implementing regulations.**

Ordinarily, the conclusion that a noncitizen's detention is governed by § 1226(a) ends the habeas analysis. *See, e.g.*, *He v. Blanche*, No. CIV-26-1435-G, 2026 WL

---

[3] This conclusion is also in accord with persuasive authority in the First, Second, Third, Fourth, Sixth, Seventh, Ninth, and Eleventh Circuits, which rejected Respondents' statutory interpretation of § 1225(b)(2). *See Lopez Garcia v. Guadian*, 190 F.4th 305, 334-35 (4th Cir. 2026); *Buele Morocho v. Warden, Phila. FDC*, 189 F.4th 287, 304 (3d Cir. 2026); *Guerrero Orellana v. Moniz*, 188 F.4th 1, 20-21 (1st Cir. 2026); *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1193-94 (9th Cir. 2026); *Cirrus Rojas v. Olson*, 183 F.4th 909, 915 (7th Cir. 2026); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, 175 F.4th 1258, 1285 (11th Cir. 2026); *Lopez-Campos v. Raycraft*, 175 F.4th 713, 722 (6th Cir. 2026); *Barbosa da Cunha v. Freden*, 175 F.4th 61, 69 (2d Cir. 2026). In contrast, the Fifth and Eighth Circuits recently applied § 1225 to similar habeas challenges, agreeing with Respondents' position. *Avila v. Bondi*, 170 F.4th 1128, 1134-38 (8th Cir. 2026); *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 498, 502-08 (5th Cir. 2026). The Supreme Court has granted certiorari on this issue. *See Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026), *cert. granted sub. nom. Rhoney v. Barbosa da Cunha*, --- S. Ct. ----, 2026 WL 2942994 (Mem) (Oct. 1, 2026).

2296120, at *2 (W.D. Okla. Aug. 10, 2026) (declining to decide a petitioner's additional due process claim when adopting the recommended relief of a bond hearing under § 1226(a)). However, in the rare circumstances when a noncitizen was previously released on bond by an IJ under § 1226(a), as in this case,[4] § 1226(b) is also implicated. Under § 1226(b), the Secretary of Homeland Security may "revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien." Section 1226(b) is implemented by 8 C.F.R. §§ 236.1(c)(9) and 1236.1(c)(9), which explain that when a noncitizen who,

> having been arrested and taken into custody, has been released, such release may be revoked at any time in the discretion of the district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, or officer in charge (except foreign), in which event the alien may be taken into physical custody and detained. If detained, unless a breach has occurred, any outstanding bond shall be revoked and canceled.

Further, federal courts have consistently relied on longstanding BIA precedent and found the broad discretion that § 1226(b) grants the Department of Homeland Security ("DHS") to re-detain noncitizens previously released on bond is subject to "an important implicit limitation": "where a previous bond determination has been made by an immigration judge, no change should be made . . . absent a change of circumstance."

---

[4] While neither party addresses what provision governed Petitioner's 2019 detention and release on bond, the 2019 IJ Bond Order cites 8 C.F.R. § 236.1(c), which implements 8 U.S.C. § 1226. *See* Doc. 16-1 at 3 (IJ Bond Order); Part 236—Apprehension and Detention of Inadmissible and Deportable Aliens; Removal of Aliens Ordered Removed, 62 Fed. Reg. 10360 (Mar. 6, 1997). Accordingly, the undersigned concludes Petitioner's 2019 detention was also governed by § 1226(a).

*Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017) (quoting *Matter of Sugay*, 17 I & N Dec. 637, 640 (B.I.A. 1981)).

In this District, Judge Heaton recently applied the same principle, and Judge Russell and Judge Jones have adopted recommendations by magistrate judges along the same lines. *See Skutar v. Mullin*, No. CIV-26-0036-HE, Doc. 15 at 2-3 (W.D. Okla. Apr. 24, 2026) (ordering a similarly situated petitioner's release after concluding "while the Attorney General has authority to revoke bond at any time under 8 U.S.C. § 1226(b), if an immigration judge has determined the noncitizen should be released, the DHS may not re-arrest that noncitizen absent a change of circumstance") (citation modified); *Amefia v. Grant*, No. CIV-26-975-R, 2026 WL 2569495, at *1 (W.D. Okla. Aug. 31, 2026) (adopting the magistrate judge's recommendation, finding a violation of due process, and ordering release for a petitioner previously released on bond where "Respondents re-detained him without notice, a hearing, or a material change in circumstances");[5] *Singh v. Cerna*, No. CIV-26-1194-J, 2026 WL 2364443, at *1 (W.D. Okla. Aug. 14, 2026) (adopting the magistrate judge's findings without de novo review and finding § 1226(b) prevents officials from interfering with a previous bond determination absent changed circumstances);[6] *see also, e.g.*, *Quesquen v. Figueroa*, No. CIV-26-1547-D, 2026 WL

---

[5] Judge Russell found Respondents in their "cursory Objection" "ha[d] not presented any persuasive argument or authority to the contrary such that [he] could conclude [he] should reject the Report." *Amefia*, 2026 WL 2569495, at *1.

[6] Judge Jones concluded Respondents "did not address the crux of [the undersigned's] findings and ha[d] waived de novo review." *Singh*, 2026 WL 2364443, at *1.

3034466, at *4 (W.D. Okla. Oct. 9, 2026) (R&R) (recommending the court find respondents violated § 1226(b) when they re-detained the petitioner who had previously been released on bond by an IJ without changed circumstances. Other courts have ruled similarly. *See, e.g.*, *Hernandez-Parrilla v. De Anda-Ybarra*, No. 25-CV-01224, 2025 WL 3632769, at *5 (D.N.M. Dec. 15, 2025); *Salcedo Aceros v. Kaiser*, No. 25-cv-06924, 2025 WL 2637503, at *1 (N.D. Cal. Sep. 12, 2025).[7]

Thus, where an IJ has previously granted a noncitizen bond under § 1226(a), ICE may only revoke that bond when it can show there are changed circumstances, and only certain immigration officials may exercise that discretion. Here, no evidence in the record indicates an ICE district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, or officer in charge made the decision to revoke Petitioner's bond. Instead, Petitioner was detained after an ICE Supervisory Detention and Deportation Officer issued a warrant for his arrest. Doc. 16-1 at 4. Moreover, the record does not reflect any material changes in Petitioner's circumstances; nor do Respondents argue any such changes have occurred. Neither party alleges, since the IJ released Petitioner on bond in 2019, that he violated the conditions of his bond or became a flight risk or a danger to his community.[8]

---

[7] A few courts have declined to read a change-in-circumstances requirement into § 1226(b). *E.g.*, *Garcia v. Jamison*, No. 26-2214, 2026 WL 1122608, at *3 (E.D. Pa. Apr. 24, 2026); *O.F.C. v. Almodovar*, No. 25-cv-9816, 2026 WL 74262 (S.D.N.Y. Jan. 9, 2026); *Salvador F.-G. v. Noem*, No. 25-CV-0243, 2025 WL 1669356, at *9 (N.D. Okla. June 12, 2025).

[8] Respondents allege Petitioner was arrested by the Tulsa Police Department, which notified ICE of the arrest. Resp. at 3; *see also* Doc. 16-1 at 6 (stating Petitioner was arrested

For these reasons, the undersigned concludes ICE violated § 1226(b) and its implementing regulations when it detained Petitioner on June 16, 2026.

**C. The revocation of Petitioner's bond violated his due process rights.**

Because § 1226(b) governs the revocation of Petitioner's bond, he is owed the due process provided to him under the statute. The Fifth Amendment's Due Process Clause protects all persons within the United States from being "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. It applies to noncitizens within the United States "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. In the civil immigration detention context, courts consistently apply the test from *Mathews v. Eldridge*, 424 U.S. 319 (1976), to evaluate the process owed a noncitizen. *See, e.g., Hernandez-Lara v. Lyons*, 10 F.4th 19, 27-39 (1st Cir. 2021) (applying *Mathews* to due process challenges to prolonged detention under § 1226(a)); *Velasco Lopez v. Decker*, 978 F.3d 842, 851-55 (2d Cir. 2020) (same).

The *Mathews* test includes three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. All three factors weigh in Petitioner's favor.

---

for "OBSTRUCTION DENY IDENTIFIERS," a misdemeanor). However, Respondents have not alleged any criminal history that resulted in his arrest outside of his immigration status or otherwise alleged any violations of the conditions of his bond.

First, Petitioner has a strong liberty interest in being free from physical detention. This is "the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez*, 978 F.3d at 851 (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)). Because freedom from restraint is "at the core of the liberty interest protected by the Due Process Clause, commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (citation modified). "Congress may make rules as to aliens that would be unacceptable if applied to citizens," *Demore v. Kim*, 538 U.S. 510, 522 (2003), but that power remains subject to "important constitutional limitations," *Zadvydas*, 533 U.S. at 695. It does not eliminate Petitioner's significant interest in being free from detention. *See, e.g., Diaz v. Noem*, No. 26-CV-00782, 2026 WL 733587, at *3 (D. Colo. Mar. 16, 2026) (concluding the first *Mathews* factors supports finding a due process violation where petitioner "is being held in a detention facility that strongly resembles penal confinement, is away from his family, and is unable to maintain his employment" (citation modified)).

Second, the risk of erroneous deprivation is high here, because an IJ already granted Petitioner bond in 2019, presumably on a finding that he posed neither a risk of flight nor a danger to the community. Doc. 16-1 at 3. Petitioner's re-detention "without notice or a hearing" creates a "considerable" risk of erroneous deprivation because it omits necessary "procedural safeguards to determine whether the revocation of his release and bond were justified." *Amefia v. Grant*, No. CIV-26-975-R, 2026 WL 2113994, at *4 (W.D. Okla. July 22, 2026) (R&R), *adopted*, 2026 WL 2569495 (W.D. Okla. Aug. 31, 2026). The risk is compounded by Respondents' current position to afford Petitioner no bond hearing. *See,*

*e.g., Montero Cordova v. Noem*, No. 26-CV-00526, 2026 WL 867689, at *9 (D.N.M. Mar. 30, 2026) (finding the second *Mathews* factor favors petitioner because "the risk of erroneous deprivation will remain high" "without the opportunity to have the hearing to which Petitioner is entitled" under § 1226(a) and noting "a bond hearing before a neutral immigration judge will provide immense value as an additional safeguard" (citation modified)); *Orellana v. Noem*, 807 F. Supp. 3d 745, 754 (W.D. Ky. 2025) ("A re-detention, without any individualized assessment, leads to a high risk of erroneous deprivation of an individual's liberty interest."). This is especially true given Petitioner's detention was not deemed necessary for more than five years.

Finally, the Court must consider the government's interest, including any fiscal or administrative burdens. *Mathews*, 424 U.S. at 335. While "control over matters of immigration is a sovereign prerogative" and the "government's interest in efficient administration of immigration laws at the border is weighty," *Landon v. Plasencia*, 459 U.S. 21, 34 (1982) (citation modified), such interests in detaining Petitioner without procedural safeguards do not outweigh his liberty interest or risk of erroneous deprivation. *See, e.g.*, *Amefia*, 2026 WL 2113994, at *4 (R&R) ("[T]he Court can discern no significant administrative or fiscal burden associated with placing the burden on the Government to follow its own laws and regulations.").

For these reasons, Petitioner's re-detention without notice and a pre-detention hearing violated his due process rights.

**D. The proper remedy is release.**

Petitioner seeks immediate release from ICE custody. Pet. at 8. When "§ 1226 governs Petitioner's detention, the due process owed to Petitioner is that provided for in § 1226." *Velasquez Salazar v. Dedos*, 806 F. Supp. 3d 1231, 1241 (D.N.M. 2025). Typically, that process is "an individualized bond hearing before an IJ." *Id.* But where a noncitizen has previously been granted bond by an IJ and is entitled to remain at liberty absent changed circumstances, matters are different.

Petitioner's re-detention without changed circumstances justifying the revocation of his IJ-granted bond violated the INA, ICE regulations, and his procedural due process rights. When confronted with similarly situated noncitizens, Judges in this District have found the noncitizens are entitled to immediate release. *See, e.g.*, *Skutar*, No. CIV-26-0036-HE, Doc. 15 at 2-3 (ordering a noncitizen released from custody where "the record contain[ed] no facts which show[ed] any change in circumstances since petitioner's initial release" and there was no indication the petitioner posed a flight or safety risk); *Amefia*, 2026 WL 2569495, at *1 (ordering release for a similar petitioner previously released on bond where "Respondents re-detained him without notice, a hearing, or a material change in circumstances"); *Singh*, 2026 WL 2364443, at *1 (adopting the magistrate judge's recommendation without de novo review and ordering release for a similarly situated petitioner);[9] *Singh v. Grant*, No. CIV-26-289-R, 2026 WL 1099500, at *5 (W.D. Okla.

[9] Judge Jones concluded Respondents "did not address the crux of [the undersigned's] findings and ha[d] waived de novo review." *Id.*

Apr. 22, 2026) (R&R) (recommending "release . . . from detention" where ICE "summarily revoked [a noncitizen's] bond"), *adopted*, 2026 WL 1483557, at *2 (W.D. Okla. May 27, 2026) ("The Magistrate issued a well-reasoned opinion finding ICE failed to comply with procedures. Upon review, and considering the lack of more specific arguments from Respondents, the Court agrees with the Magistrate."); *see also Quesquen*, 2026 WL 3034466, at *4 (R&R) (recommending release where respondents violated § 1226(b) when they re-detained a petitioner, previously released on bond by an IJ, without changed circumstances).

This approach of immediate release aligns with the scope of habeas remedy ordered by many other courts considering what relief to provide noncitizens whose IJ-ordered bond was improperly revoked. *See, e.g.*, *B.F. v. Mullin*, No. 26-cv-2992, 2026 WL 2198915, at *5 (D. Minn. July 24, 2026); *Peña Becerra v. Sparks*, No. 26-cv-00212, 2026 WL 915439, at *7 (D. Utah Apr. 3, 2026); *Singh v. Hale*, No. 26-cv-53, 2026 WL 765623, at *5 (D. Vt. Mar. 18, 2026); *Hernandez-Parrilla*, 2025 WL 3632769, at *7; *accord Galindo Vega v. Warden*, No. 26-cv-03604, 2026 WL 1707804, at *1 (E.D. Cal. June 12, 2026) (finding a bond hearing, rather than immediate release, was the appropriate remedy where evidence the record indicated changed circumstances).

Accordingly, the undersigned recommends that Petitioner be immediately released from detention subject to the conditions of his prior bond.[10] Alternatively, if the Court

---

[10] In ordering similar relief, Judges in other districts have acknowledged that ICE retains the power to re-detain noncitizens previously released on IJ-ordered bond where it proves by clear and convincing evidence at a pre-detention hearing before an IJ that the

declines to find Respondents improperly revoked Petitioner's IJ-granted bond, the Court should order Respondents to provide a bond hearing within seven days under § 1226(a). *See Munoz*, 2026 WL 2200433, at *3 (concluding because § 1226(a) governs petitioner's detention, "he is entitled to a bond hearing").

**E. The Court should decline to address Petitioner's remaining claims.**

Petitioner also argues his continued detention without a bond hearing violates the APA, the INA, immigration regulations, and the Fourth Amendment. Pet. at 7-8. If the Court grants Petitioner's requested relief for release, the Court need not decide the merits of his remaining claims. *See, e.g.*, *He*, 2026 WL 2296120, at *2 (declining to decide a petitioner's additional due process claim when adopting the recommended relief of a bond hearing under § 1226(a)).[11]

---

noncitizen's circumstances have changed in a manner justifying the revocation of the previous bond. *E.g.*, *Peña Becerra*, 2026 WL 915439, at *7; *Hernandez-Parrilla*, 2025 WL 3632769, at *7; *dos Santos v. Noem*, No. 25-CV-12052, 2025 WL 2370988, at *9 (D. Mass. Aug. 14, 2025); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *cf. O.F.C.*, 2026 WL 74262, at *12 (while finding that due process does not require a pre-detention hearing, concluding "due process requires the Government to provide a prompt post-arrest hearing at which the individual can contest his detention and at which the Government bears the burden of proving by clear and convincing evidence the individual's dangerousness or risk of flight based on changed circumstances"). Judges in this District have not squarely addressed this issue. In *Singh v. Grant*, Judge Mitchell recommended the government be enjoined "from re-detaining [the] Petitioner without notice and . . . a pre-deprivation hearing before a neutral decisionmaker." 2026 WL 1099500, at *5. Adopting the report and recommendation, Judge Russell ordered "immediate release" but did not address what should happen after release. *Singh*, 2026 WL 1483557, at *3.

[11] To the extent Petitioner alleges police brutality, such claims are outside the scope of this Court's habeas review. A petitioner who challenges "the fact or duration" of his confinement and seeks release from ICE custody must bring a § 2241 habeas petition, but allegations related to police brutality must be brought through a civil rights action under

## V. Recommendation and Notice of Right to Object

For these reasons, the undersigned recommends that the Court **GRANT in part** the Amended Petition for habeas relief, Doc. 6, by ordering Respondents to release Petitioner immediately subject to the conditions of his 2019 bond order and to enjoin Respondents from re-detaining him without notice and a pre-detention hearing before a neutral IJ.

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed not later than **November 13, 2026**. *See id.* § 636(b)(1); Fed. R. Civ. P. 72(b)(2). If a party wishes to respond to the other party's objections, such response must be filed not later than **November 18, 2026**. *See* Fed. R. Civ. P. 72(b)(2). Failure to object timely waives the right to appellate review of the factual and legal issues addressed in this Report and Recommendation. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this matter.

**ENTERED** this 5th day of November, 2026.

Chris M. Stephens

CHRIS M. STEPHENS
UNITED STATES MAGISTRATE JUDGE

42 U.S.C. § 1983 or *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). *See, e.g.*. *Williams v. Sterrect*, No. 19-CV-2905, 2021 WL 2481892, at *3 (N.D. Tex. May 19, 2021) (R&R), *adopted*, 2021 WL 2480167 (N.D. Tex. June 16, 2021).